## BUSH GARDNER v. THE STATE.

### No. 5395. Decided May 21, 1919.

**Intoxicating Liquors—United States Soldiers—Insufficiency of the Evidence.**

Where, upon trial of knowingly purchasing, procuring for, selling, giving or causing to be given or delivered to any person engaged or enlisted in the military forces of the United States, any spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication, the evidence was insufficient to sustain the conviction the judgment is reversed and the cause remanded.

Appeal from the District Court of Galveston. Tried below before the Hon. Robt. G. Street.

Appeal from a conviction on knowingly purchasing, etc., intoxicating liquors and delivering same to persons in the military forces in the United States; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*E. A. Berry,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted for violating the Act of the Fourth Called Session of the Thirty-fifth Legislature, which punishes any person who shall directly or indirectly, knowingly purchase or procure for, or sell, give, or cause to be given or delivered to any person engaged and enlisted in the military forces of the United States, any spiritous, vinous or malt liquors or medicated bitters capable of producing intoxication. The punishment is from two to five years under said Act.

The evidence discloses that appellant and Rishel, the alleged soldier or marine, were brothers-in-law. It also shows that appellant occupied a room in the "Atlantic Rooms," an adjunct to the "Atlantic Hotel," both under the control and management of the witness Foley. In the evening about 8 o'clock, or half past, Foley was on the front gallery of the Atlantic Rooms and saw Rishel; that he inquired for appellant. Foley and Rishel went to appellant's room. It was locked; appellant was absent. Rishel went back across the street where he remained for a while. Appellant came in an auto. He and Rishel went to appellant's room and remained a short

time and emerged, appellant having a "grip," and went away.
Foley becoming suspicious phoned for the officers. Finally about
9:30 or 10 o'clock they came. Foley, having a pass key with
which he could open appellant's room, accompanied the officers,
and they searched the room and in it found in the bottom of a
dresser drawer two bottles, which he says he judged to be quart
bottles. The color of the liquid they contained was red. He did
not smell it. These bottles were left where they were found, and the
parties returned to the hotel office. Witness says he was under the
impression he locked the door of appellant's room. After a while
Rishel returned, went to the room and as he came out in the hall
way one of the officers accosted and took him to a room, and in
the presence of witness Foley took from Rishel's overcoat a bottle,
which was one of the bottles he saw in appellant's room. He speaks
of those bottles as bottles of wine. When all this occurred appel-
lant was not present; was not in his room. Something like a half
hour later he returned. Rishel testified that he was a brother-in-
law of defendant, and knew where appellant's room was, and on
the 5th of January went to it by himself. When he went the first
time he had not seen appellant. The second time he went alone;
that he did not remember what time of the day it was, but sup-
posed it was something like 8 o'clock. Quoting, he said: "I got a
quart of liquor in room 15; a quart of wine. I went there to get
that quart of wine because I knew it was there, or supposed to be
there, at least; I knew he had it. I had had a conversation with
him with reference to the wine a day or two before I went there;
I cannot say exactly when. I asked him if he had any wine and he
said, 'Yes.' So I went after it. I had an arrangement with him
about pay for the wine; I was to pay five dollars for it; I left the
money there under the bed clothes." He was then asked this ques-
tion: "Was or was not that the arrangement you had with the de-
fendant as to where you were to leave the money. A. No sir. Q.
Did you or not afterwards tell him where you left the money? A.
No sir." He says: "The first time I went there that night I went
to Bush Gardner's room. I did not see Bush Gardner after that
before I went the second time." It was on the second visit he got
the bottle. On cross-examination he said: "Bush did not tell me at
this time to leave any money there for this wine. If I wanted any
wine I knew where it was, but he didn't tell me to go there and get
it. Bush Gardner has, in his lifetime, sold me a bottle of whisky
or wine of some character, but not at that room. I went up there
and got this wine in Bush's absence and left five dollars under the
bed for him. Bush didn't know anything about that at present, and
he didn't know anything about it until after I got it." On re-direct
examination he was asked: "Did you or not have an arrangement
with him by which you were to get the wine, if you wanted it, and
leave the money for the wine? A. He said he would be there, but

he wasn't there, but the wine was.  Q.  The arrangement was that you were to call for it and he would deliver the wine?  A. No sir. He didn't say he would deliver it; he would be at the room, but he wasn't there.  How I got in the room was, I opened the door and walked in.''  Bolling, one of the officers who was present on that occasion, testified that after they waited in the office a while appellant came and answering inquiry said he did not know anything about any whisky.  ''We found some wine in the room and he said it was his, that he had bought it; we found two quarts of wine in the room; that was before the soldier came in.  The soldier brought it out with him.  I didn't see the soldier bring it out with him, but Mr. Webb saw that.''  This is the case substantially as made.

The contention is made that this evidence does not support the conviction.  This is a case of circumstantial evidence from any view point.  From the statements made by these witnesses it must be determined, if appellant is guilty, that he so acted as to willingly permit his brother-in-law to go in his room and get the wine, and was connected with it so as to bring him within the purview of the law as indirectly furnishing it.  This must be proved to the exclusion of every reasonable doubt.  If that be satisfactorily shown, then it must also be shown that the bottle contained wine.  No witness testified as to the contents of the bottle, or that it was open. The only witness testifying in regard to this matter was Foley, who said it was a red looking liquid, but he did not smell it.  There is no evidence that the bottle was opened or any of the contents tested. The bottle was not accounted for at the trial, though the officers said they took both and kept them; The statement that they were bottles of wine would hardly be sufficient to prove contents.  If the bottles contained wine and it was such wine as would intoxicate, and appellant placed it so that Rishel could get it, he would be guilty under that statute.  It was easy to ascertain if it was a fact that the bottle contained wine and that it was an intoxicant.  There are too many presumptions and too few facts to justify sending this man to the penitentiary when the record itself discloses that ample proof could have been produced to show that the bottles contained wine if such was the fact and that it was of an intoxicating nature.  All this evidence being in possession of the State, could have been but was not shown, nor any reason given why it was not produced.  While this act was intended to protect the soldiers, and punish those who furnish then with intoxicants, yet there must be evidence upon which to base a conviction, and this of such a satisfactory nature as to overcome the presumption of innocence, and reasonable doubt, and this being a case of circumstantial evidence, it must be shown to the exclusion of every reasonable hypothesis except that of guilt that he should be punished.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*